IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMY RAY BANEGAS SR.,

      Plaintiff,

v.                                                      CIV 18-1162 KBM

ANDREW M. SAUL,
Commissioner of Social
Security Administration,

      Defendant.

# **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (*Doc. 17*), filed on July 12, 2019. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 3*; *6*; *7.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted.

**I.**     **Procedural History**

This is Plaintiff's second appeal. Mr. Jimmy Ray Banegas, Sr. (Plaintiff) protectively filed an application with the Social Security Administration for Disability Insurance Benefits (DIB) under Title II of the Social Security Act on May 15, 2013. Administrative Record[1] (AR) at 169-70. Plaintiff alleged a disability onset date of November 5, 2010. AR at 169. Plaintiff's earning record showed that he met "the

---

[1] Document 10-1 comprises the sealed Administrative Record. *See Doc. 10-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

insured status requirements of the Social Security Act through June 30, 2016." AR at 15.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 82-91) and on reconsideration (AR at 93-103). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of his applications. AR at 115-16. Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 55-81. ALJ Eric Weiss issued an unfavorable decision on January 20, 2016. AR at 10-26. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 8-9), which the Council denied on April 8, 2016 (AR at 1-7). Thus, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

Plaintiff appealed ALJ Weiss's decision to this Court. *See Banegas v. Berryhill*, Civ. No. 16-500 KK, 2017 WL 3172783 (D.N.M. May 25, 2017). United States Magistrate Judge Kirtan Khalsa granted Plaintiff's motion to remand on the basis that the ALJ failed to properly evaluate his oculopharyngeal muscular dystrophy (OMD) and related symptoms. *See id.* at *2-4.

While Plaintiff's federal appeal was pending, he filed a subsequent Title II claim for DIB on June 9, 2016. *See* AR at 604. "The State agency found [him] disabled as of March 26, 2016." AR at 604. The Appeals Council directed the ALJ, on remand from this Court, to consider the period prior to March 26, 2016. *See* AR at 604; *see also Doc. 19* at 1.

On May 9, 2018, ALJ Eric Weiss held a second *de novo* hearing, at which both Plaintiff and another VE testified. AR at 561-77. ALJ Weiss then issued a second

unfavorable decision on June 4, 2018. AR at 544-60. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 619-20), which the Council denied on October 17, 2018 (AR at 537-43). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal*, 331 F.3d at 759. Plaintiff then filed a suit in this Court seeking remand for a rehearing. *Doc. 1*.

II.     **Applicable Law and the ALJ's Findings**

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform her past relevant work (PRW). 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of

3

[his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[2] ALJ Weiss found that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of November 5, 2010 through his date last insured of June 30, 2016." AR at 549 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, the ALJ concluded that Plaintiff "had the following severe impairments: degenerative joint disease of the right shoulder (with rotator cuff tear, subacromial impingement, and intra-articular tear of biceps tendon, status post surgical repair); degenerative arthritis of the right knee; hearing loss; coronary artery disease (status post myocardial infarction and stenting); [OMD] with bilateral ptosis; obstructive sleep apnea; and obesity." AR at 549 (citing 20 C.F.R. § 404.1520(c)). ALJ Weiss also noted the following nonsevere impairments that do not "significantly limit the ability to perform basic work activities": "left inguinal hernia (status post surgical repair), hypertension, and hyperlipidemia." AR at 549-50.

---

[2] ALJ Weiss found that Plaintiff "last met the insured status requirements of the Social Security Act through June 30, 2016." AR at 549; *see also* AR at 15.

At Step Three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 550 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ determined that Plaintiff,

> through March 25, 2016, . . . had the [RFC] to lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently. He could stand and walk for six hours per eight-hour workday and could sit for six hours per eight-hour workday, with normally scheduled breaks. He could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, crouch, kneel, and crawl. He could occasionally reach overhead with the dominant right upper extremity. He needed to avoid more than a moderate noise environment, and could only have occasional exposure to unprotected heights, dangerous moving machinery, and pulmonary irritants, such as dust, fumes, odors, and gases.

AR at 550. The ALJ determined that Plaintiff was capable of performing his PRW as an armed guard. AR at 554. Ultimately, the ALJ found that Plaintiff "was not under a disability, as defined in the Social Security Act, from November 5, 2010, the alleged onset date, through March 25, 2016." AR at 554 (citing 20 C.F.R. § 404.1520(f)).

## III.     Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but

less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

Plaintiff contends that the following issues require reversal: (1) the ALJ improperly rejected his report of symptoms and inadequately weighed the evidence, thus the RFC is contrary to substantial evidence of record; (2) the ALJ erred in finding he could perform his PRW; and (3) the Appeals Council erred by failing to remand pursuant to *Lucia v. SEC*, 138 S. Ct. 2044 (2018).[3] *Doc. 17* at 1-2.

### A. The Court will remand for further analysis of Plaintiff's RFC.

Plaintiff first argues that ALJ Weiss's RFC determination is not supported by substantial evidence with respect to his lower extremity limitations, upper extremity

---

[3] Plaintiff originally argued that the ALJ failed to call a medical expert or adequately analyze his onset date, but he later withdrew this argument. *See Docs. 17* at 18-19; *20* at 5.

limitations, and the limitations attributable to his OMD, cardiac condition, and fatigue. *Doc. 17* at 6-18.

1. **Upper extremity limitations**

Plaintiff argues that the ALJ's RFC determination that he can "lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently" and can "occasionally reach overhead with the dominant right upper extremity" (AR at 550) is contrary to substantial evidence. *Doc. 17* at 7.

The Court must uphold the ALJ's RFC determination if it is supported by substantial evidence, which is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Here, ALJ Weiss's decision is supported by substantial evidence. He noted Plaintiff's reports of pain and weakness of the right shoulder throughout the record (AR at 551 (citing, *e.g.*, AR at 303, 323, 355, 382)) and his July 1, 2013 self-report that he could lift 20 pounds with difficulty due to the impairment in his right shoulder (AR at 551 (citing AR at 241)). The ALJ observed that before Plaintiff underwent right shoulder arthroscopy with arthroscopic rotator cuff repair and subacromial decompression and acromioplasty (AR at 551 (citing AR at 282, 303, 311, 331, 366, 382)), his provider, Marie F. Hatam, M.D., had prescribed medications (Ibuprofen 800 mg), physical therapy, and shoulder injections (AR at 551 (citing AR at 283, 303, 311, 331); *see also* AR at 340), and physical exams had revealed "decreased range of motion of the right shoulder, weakness to the right shoulder, moderate tenderness to palpation of the right shoulder, . . . positive Hawkins sign, and mild Neer sign." AR at 551 (citing, *e.g.*, AR at 282, 284, 303, 311, 367, 370).

After surgery, physical examinations showed "full range of motion in all four extremities, normal strength, . . . [and] also decreased and painful range of motion of the right shoulder at 140 degrees, . . . some right shoulder weakness, and mild Hawkins test." AR at 552 (citing, *e.g.*, AR at 355, 357, 373, 441). An "MRI of the right shoulder showed mild residual tendinosis, slight muscle volume loss, low-grade impingement, and mild posterior labral fraying without a displaced tear." AR at 552 (citing AR at 373). Plaintiff testified that he used only over-the-counter pain medications, and the ALJ noted that there were no prescribed pain medications in the record as of March 2016. AR at 552 (citing AR at 721).

Plaintiff provides a summary of the medical evidence to show that his upper extremity limitations were more severe than the ALJ acknowledged. *Doc. 17* at 8-10. Of the twelve records that Plaintiff cites, however, the ALJ specifically discussed seven of them[4] and discussed the subject matter of three others.[5] Plaintiff essentially asks the Court to reweigh the evidence, which is not within this Court's purview.

Plaintiff next argues that ALJ Weiss "engaged in no meaningful discussion of [his] ability to reach." *Doc. 17* at 10; *see also Doc. 20* at 2. Plaintiff argues that

---

[4] *Compare Doc. 17* at 8-10 (citing AR at 311-12, 323, 303-04, 381, 382, 282, 281, 364, 363, 357, 355-56, 371), *with* AR at 553 (citing AR at 312), 551 (citing AR at 323), 551 & 553 (citing AR at 303, 304), 551 (citing AR at 382), 551 (citing AR at 282), 552 (citing AR at 357, 355).

[5] *Compare Doc. 17* at 9 (citing AR at 281 (Oct. 3, 2011 note discussing decreased active range of motion abduction, adduction, internal rotation and external rotation, extension), *with* AR at 551 (citing AR at 282 (discussing June 9, 2011 note discussing decreased range of motion regarding flexion, extension, adduction, abduction, internal rotation and external rotation)); *Doc. 17 at 9* (citing AR at 363 (Aug. 23, 2011 note observing that Plaintiff improved with physical therapy)), *with* AR at 551 (noting that the medical "evidence shows some improvement with treatment" including physical therapy); *Doc. 17* at 10 (citing AR at 371 (Dr. Romanelli's notes on Plaintiff's May 2013 MRI), *with* AR at 552 (discussing AR at 373 (Dr. Romanelli's notes on Plaintiff's May 2013 MRI)).

8

"[o]ccasional overhead reaching means that [he] could perform that activity up to 1/3 of the time, or about two hours of an eight-hour workday." *Doc. 17* at 10 (citing SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983)). The regulations define "occasionally" as an activity that "occur[s] from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5. As the Commissioner points out, however, "the state agency physicians . . . reviewed the evidence regarding his right shoulder impairment" and found that Plaintiff was capable of a reduced range of light work with occasional overhead reaching with the right upper extremity. *See Doc. 19* at 7; AR at 88, 99-100. The ALJ gave the state agency physicians' opinions significant weight and specifically noted that the opinions were "consistent with the evidence showing effective surgery and stent placement, . . . [and] painful range of motion of the right shoulder . . . ." AR at 553 (citations omitted).

Plaintiff argues that the state agency physicians' opinions are "stale" because they "were rendered before his 2015 cardiac arrest." *Doc. 20* at 1. Plaintiff does not develop any argument to explain, however, how his 2015 cardiac arrest and stent placement (which the ALJ specifically considered in his opinion) affected his abilities to use his upper extremities. *See id.*

It is clear that the ALJ considered the record evidence, including the evidence that supported Plaintiff's claims of limitations, and his findings are supported by substantial evidence. The Court will not remand on this issue.

### 2. Lower extremity limitations

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination that he can stand and/or walk for six hours in an eight-hour workday.

9

*Doc. 17* at 10-13. Plaintiff asserts that the ALJ failed to consider record evidence that is contrary to the RFC determination. *Id.* at 10. Again, however, the ALJ discussed much of the evidence Plaintiff cites, and of the records the ALJ did not specifically cite, he discussed the subject matter of those records in his opinion.[6]

Plaintiff argues that the ALJ's findings rely too heavily on treatment notes showing that he walked with a normal gait, but that fact "does not paint a complete picture." *Doc. 20* at 3 (citing *Praytor v. Comm'r, SSA*, 750 F. App'x 723, 727-28 (10th Cir. 2018)). In *Praytor*, the claimant's treating physician opined that she "could sit, stand, and walk less than two hours in an eight-hour work day and . . . needed to rest due to pain." 750 F. App'x at 725. The ALJ deemed the opinion "'unreasonably restrictive' and Ms. Praytor's allegations of severe pain 'not fully credible[,]'" *id.* at 726 (quotation omitted) and discounted the physician's opinion due to other record evidence as well as the opinions of the state agency physicians. *Id.* at 727. The Tenth Circuit

---

[6] Of the 2010 evidence Plaintiff cites (*Doc. 17* at 11 (citing AR at 303, 304, 287, 289, 311, 295-301, 313-19)), the ALJ specifically cited four of the records (*see* AR at 551 (citing AR at 303, 289, 311), 553 (citing AR at 304)). Plaintiff cites his physical therapy records (AR at 295-101, 313-19) to show that he "continued to report pain ranging from 5 to 7/10"; and the ALJ also discussed Plaintiff's reports of knee pain (*see* AR at 551 (citing AR at 303) (citing to a record that states Plaintiff "has had physical therapy and does not feel better" and reported "excruciating pain when standing and walking" and ALJ noting that Plaintiff "reported right knee pain . . . and pain with standing and walking" throughout the record)).

Of the six 2011 records Plaintiff cites (*Doc. 17* at 11 (citing AR at 287, 368, 367, 364, 362, 363)), the ALJ cited two of them specifically (AR at 551 (citing AR at 367, 368)). The ALJ generally discussed the subject matter of the remaining records. *See* AR at 551 (citing AR at 303) (discussing Dr. Hatam's Dec. 6, 2010 findings of antalgic gait and crepitus, which are similar to her Jan. 1, 2011 findings that Plaintiff cites), 551 (citing AR at 367, 368) (discussing Dr. Romanelli's 2011 records).

Of the six 2012-13 records Plaintiff cites (*Doc. 17* at 12 (citing AR at 361, 359, 358, 379, 346, 347)), the ALJ cited three of them specifically (*see* AR at 552 (citing AR at 357-58, 359, 346)). The ALJ generally discussed Plaintiff's arthritis (*see* AR at 551-52), as well as Dr. Romanelli's 2013 records (*see, e.g.*, AR at 551 (citing AR at 355)).

found, however, that the evidence on which the ALJ relied was unrelated to the claimant's complaints of pain, "which was the basis for [the treating physician's] opinion." *Id. Praytor* is distinguishable from this case, though, because Plaintiff has not offered a treating provider's opinion that supports more restrictive limitations.

Plaintiff contends that it was error for the ALJ to conclude "that the knee injections provided sufficient improvement to allow standing and walking for most of the workday." *Doc. 17* at 13 (citing AR at 552). This is not all ALJ Weiss relied on, however. He also noted that Plaintiff "was only using over-the-counter pain medications" (AR at 552), that his provider allowed him "to return to work at light duty, and the treatment notes indicate that [he] could return to full work, four to six months after surgery." AR at 553 (citing AR at 365, 367). And as the Commissioner points out, the ALJ gave significant weight to the state agency physicians, who opined that Plaintiff could stand and/or walk up to six hours per workday. *See* AR at 87, 99, 553. Because the ALJ discussed and relied on substantial evidence in assessing Plaintiff's lower extremities limitations, the Court may not overturn his findings and declines to remand on this issue.

### 3. Limitations due to OMD, cardiac condition, and fatigue

Finally, Plaintiff argues that "his weakness and fatigue affect his ability to sustain work activity, and that these limitations are supported by the evidence of a cardiac event in 2015, obstructive sleep apnea, and [OMD]."[7] *Doc. 20* at 3-4. He asserts that the ALJ did not properly evaluate his allegations of weakness and fatigue in accordance with

---

[7] OMD can cause drooping eyelids (ptosis), difficulty swallowing (dysphagia), and muscle weakness in the face and limbs. *See Oculopharyngeal Muscular Dystrophy Signs and Symptoms*, Muscular Dystrophy Ass'n, https://www.mda.org/disease/oculopharyngeal-muscular-dystrophy/signs-and-symptoms (last visited Oct. 10, 2019).

Social Security Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *Doc. 17* at 15.

Social Security Ruling 16-3p defines the two-step process an ALJ must use to evaluate a claimant's symptoms. SSR 16-3p, 2017 WL 5180304. At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms, such as pain." *Id.* at *3. At the second step, after the ALJ has found such an impairment, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id.*

> As part of the step two evaluation, the ALJ considers the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. § [404].1529(c)(3), which include:
>
> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Ramirez v. Berryhill*, No. CIV 17-0781 KBM, 2018 WL 4915830, at *8 (D.N.M. Oct. 10, 2018) (quoting SSR 16-3p at *7-8).

Relevant to this issue, ALJ Weiss discussed:

Daily activities: ALJ Weiss observed that Plaintiff "help[ed] care for animals with frequent breaks, could do indoor and outdoor chores a couple of times per week, . . . could walk and drive for transportation[,]" and "could prepare meals . . . ." AR at 551, 552 (citations omitted).

The location, duration, frequency, and intensity of pain or other symptoms: ALJ Weiss noted Plaintiff's testimony that he experienced muscle weakness, "difficulty walking, difficulty completing activities of daily living, and progressive weakness in the lower extremities." AR at 551, 552. The ALJ stated that the record "evidence generally shows mild findings [related to OMD], with no loss of balance, no loss of motor function, no loss of transfer, and no loss of cognition." AR at 552 (citations omitted). ALJ Weiss noted Dr. Iqbal's remarks that OMD is progressive. AR at 552 (citing AR at 395).

The ALJ acknowledged that Plaintiff has "coronary artery disease with a history of myocardial infarction [and] obstructive sleep apnea" but stated that "the evidence shows effective medical treatment and only mild to moderate findings." AR at 552. For example, "[p]hysical examinations showed no edema, normal pulses, and normal cardiovascular sounds . . . ." AR at 553 (citing, *e.g.*, AR at 418, 535).

Plaintiff "reported snoring, excessive daytime sleepiness, tiredness, nocturnal choking, and difficulty sleeping." AR at 553 (citing AR at 515).

Type, dosage, effectiveness, and side effects of any medication: After Plaintiff's myocardial infarction, cardiac catheterization, and stent placement, he was prescribed Benazepril, Pravachol, umbiquinal, and fish oil supplements. AR at 552-53 (citing AR at 438). He was also prescribed HCTZ, Effient, metoprolol, and aspirin. AR at 553 (citing AR at 415, 418, 494, 721).

Treatment other than medication: The ALJ noted that while "there is no medical treatment for [OMD,]" Plaintiff "tries to walk as a preventive exercise" (AR at 551), and Dr. Iqbal noted that Plaintiff could try physical therapy for leg and arm weakness (AR at 552 (citing AR at 395)).

Plaintiff experienced a myocardial infarction on April 24, 2015, and "underwent cardiac catheterization with stent placement, with no complications." AR at 552 (citing AR at 437, 442, 452, 468-69, 496). In June 2015, Plaintiff "underwent successful angioplasty and stent placement." AR at 553 (citing AR at 432, 511). "By September 25, 2015, [Plaintiff's] provider classified [his] coronary disease as stable." AR at 553 (citing AR at 415).

The ALJ noted that Plaintiff's "providers recommended exercise and weight loss[] and prescribed a CPAP device" for his sleep apnea and coronary condition. AR at 553 (citing AR at 415, 418, 494, 721).

Plaintiff argues that the evidence ALJ Weiss relied on does not represent "substantial evidence to denigrate [his] reporting of symptoms . . . ." Doc. 20 at 4. The Commissioner contends that ALJ Weiss "reasonably accounted for Plaintiff's OMD, cardiac condition, and fatigue, noting that he had only mild leg weakness; he received effective medical treatment for a heart attack and coronary artery disease; a sleep study showed obstructive sleep apnea; and Plaintiff's doctors recommended exercise and weight loss." Doc. 19 at 10 (citing AR at 417-18, 420, 424, 437, 494, 552-53). Plaintiff counters that while his coronary condition was effectively treated and deemed "stable," "he continued to have borderline hypertension." Doc. 20 at 4 (citing AR at 414-15, 420, 423, 432, 440-42, 701; *Guice v. Comm'r, SSA*, No. 18-6177, 2019 WL 4200382, at *6-7

(10th Cir. Sept. 5, 2019)). In *Guice*, the ALJ gave the "'greatest weight' to the opinions and mental RFC of the state-agency psychologists, who provided their opinions in 2013 based on a review of [the claimant's] then-existing medical records" but before the claimant submitted additional evidence covering the period from 2013-2016. 2019 WL 4200382, at *1, 2. The ALJ gave "'limited' weight to the opinions of [the claimant's] treating physicians . . . , which were both provided in 2016, but she did not incorporate any part of their opinions in [the] RFC and thus effectively rejected their opinions." *Id.* at *2 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)) (internal citation omitted).

Here, ALJ Weiss gave significant weight to the state agency physicians' opinions, which were rendered before Plaintiff's 2015 myocardial infarction. AR at 553. The ALJ ultimately incorporated the following restrictions into Plaintiff's RFC "[d]ue to [OMD] with bilateral ptosis, hearing loss, coronary artery disease, and obstructive sleep apnea": "he needed to avoid more than a moderate noise environment, and could only have occasional exposure to unprotected heights, dangerous moving machinery, and pulmonary irritants." AR at 554. Plaintiff argues that the ALJ erred in failing to incorporate further limitations into his abilities to stand and walk due to his weakness and fatigue and that this failure was due to his erroneous evaluation of Plaintiff's symptoms pursuant to Social Security Ruling 16-3p. *Doc. 17* at 15. Plaintiff argues that "[e]ven if [his] OMD did not worsen" after the state agency physicians formed their opinions, he did "suffer[] a heart attack, cardiac catheterization, and stent placement during this time frame, which supports his claims of fatigue and weakness." *Doc. 20* at 5 (citing AR at 420, 423, 432, 440-42, 701). The Court agrees that the ALJ's RFC

limitations based on these impairments does not appear to account for any fatigue or weakness, symptoms that are supported by the medical evidence. In *Qualls v. Apfel*, the claimant argued that the ALJ erred in failing to restrict his RFC due to "his alleged inability to perform repetitive movements with his hands . . . ." 206 F.3d 1368, 1372 (10th Cir. 2000). The Tenth Circuit found no error, however, because the medical record did not show any such limitations. *Id.*

In contrast, here, Plaintiff points to record evidence that the ALJ did not consider in support of Plaintiff's contention that his OMD, cardiac condition, and sleep apnea caused weakness and fatigue. *Doc. 17* at 14-17 (citing AR at 394-95, 420, 423, 432, 515, 513, 701); *Doc. 20* at 4-5 (citing AR at 414-15, 420, 423, 432, 440-42, 701, 322, 324, 367). Moreover, the Commissioner points to no evidence that Plaintiff's weakness and fatigue had resolved. *See, e.g.*, *Mendez v. Colvin*, 588 F. App'x 776, 780 (10th Cir. 2014) (finding no error when ALJ did not discuss the claimant's "claims of fatigue, [as] those claims were not significantly probative because his symptoms had resolved"). Because the ALJ did not "discuss the uncontroverted evidence he [chose] not to rely upon, as well as significantly probative evidence he reject[ed,]" *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citations omitted), the Court finds that the case must be remanded so that the ALJ may reevaluate the RFC in light of Plaintiff's allegations of weakness and fatigue.

 **B.** **The ALJ is directed to revisit the PRW finding if, upon remand, Plaintiff's RFC is revised.**

ALJ Weiss found that Plaintiff was able to perform his PRW. AR at 554. Plaintiff advances a number of arguments to attack this finding. First, he again argues that the

"RFC finding failed to include all limitations that are supported by the evidence." *Doc. 17* at 19. If upon remand the ALJ revises Plaintiff's RFC, the Court directs the ALJ to revisit the PRW finding.

Second, Plaintiff argues that the ALJ erred by failing to ask the VE "if her testimony would be consistent with the information in the [Dictionary of Occupational Titles (DOT)]." *Id.* (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)). Social Security Ruling 00-4p requires an ALJ to "elicit a reasonable explanation for" any "apparent unresolved conflict between" the evidence and the DOT. 2000 WL 1898704, at *2. Again, because the Court is remanding for the ALJ to reevaluate Plaintiff's RFC regarding his weakness and fatigue, it declines to make any findings about apparent conflicts pursuant to SSR 00-4p.

Plaintiff also argues that the ALJ erred by finding that he could perform his PRW as it was "generally performed," because one of the two positions at issue was a "composite job." *Doc. 17* at 21-23. He contends that because the position of security guard was a composite job, the ALJ was required to consider whether Plaintiff could perform the position as it was "actually performed," not as it is "generally performed." *Id.*

"Composite jobs are jobs that 'have significant elements of two or more occupations, and, as such, have no counterpart' in the [DOT]." *Newberry v. Berryhill*, No. CV 16-192 CG, 2017 WL 3602036, at *9 (D.N.M. Feb. 23, 2017) (quoting SSR 82-61, 1982 WL 31387 *2 (Jan. 1, 1982)). "The Social Security Administration Programs Operations Manual ('POMS') states that if a job can only be accurately described by considering multiple DOT occupations, the job may be a composite job." *Id.* (citing POMS DI 25005.020(B)). "ALJs should not consider composite jobs 'as generally

performed in the national economy.'" *Id.* (quoting POMS DI 25005.020(B)). "For instance, in *Armstrong v. Sullivan*, a claimant worked simultaneously as a cook and cashier at a barbecue restaurant." *Id.* (quoting 814 F. Supp. 1364, 1371 (W.D. Tex. 1993)). "The ALJ found the claimant able to perform her job as a cashier, therefore able to perform her past relevant work." *Id.* (citing *Armstrong*, 814 F. Supp. at 1371). The district court remanded because the cashier/cook position was "'clearly' a composite job and . . . the ALJ erred by splitting the composite job in two." *Id.* (quoting *Armstrong*, 814 F. Supp. at 1372).

At the first hearing in this matter, before Judge Khalsa remanded in 2017, the VE testified that Plaintiff's position with one of his previous employers (L&M Technologies) was a composite job, combining duties of gate guard (DOT 372.667-030) and security guard (DOT 372.667-034). *See* AR at 74-76. The VE determined that Plaintiff's PRW with his second employer (Caelum Research Corp.) was as a security guard. AR at 22, 76. Consequently, ALJ Weiss considered whether Plaintiff could actually perform this position. *See* AR at 22. On remand at the second hearing, the VE considered the record and Plaintiff's testimony about his PRW and found that *both* positions should be classified as *armed* guards (DOT 376.367-010), because Plaintiff carried a weapon in both.[8] *See* AR at 573.

---

[8] Plaintiff makes two errors in his brief. First, he mistakenly identifies the DOT number of armed guard as 376.367-014, which is the position of detective – not an armed guard as described by the VE. *See* Doc. 17 at 21. Plaintiff then fails to recognize that while the VE initially identified Plaintiff's position at Caelum Research as a security guard, she changed her opinion and testified that his position was that of armed guard because he carried a weapon. *See* AR at 573-74; Doc. 20 at 5-6.

18

Plaintiff argues, without citing to any authority, that the ALJ should have considered the *first* VE's testimony and found his PRW to be a composite job. *Doc. 17* at 21-23. The Court disagrees. "When presented with the two conflicting VE opinions, the ALJ could reasonably rely on the well-supported hearing testimony of the VE from the most recent hearing." *Wilcox v. Colvin*, No. 12-CV-01167-WYD, 2013 WL 5201079, at *5 (D. Colo. Sept. 16, 2013) (citing *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) ("We may 'neither reweigh the evidence nor substitute our judgment for that of the Agency'"); *Brown v. Chater*, 106 F.3d 413, at *2 (10th Cir. 1997) ("It is the province and duty to the ALJ to reconcile conflicts in the record")). Moreover, because Plaintiff's RFC had changed from the first to the second hearing (*compare* AR at 17, *with* AR at 550), the ALJ was entitled solely to rely on the VE's testimony at the second hearing. *See Holzworth v. Colvin*, No. 2:12-CV-916 BCW, 2014 WL 6977700, at *2 (D. Utah Dec. 9, 2014) (finding that the ALJ erred in relying on VE testimony from the first administrative hearing when the RFC changed from the first to the second hearing); *Garza v. Apfel*, 162 F.3d 1173, at *2-3 (10th Cir. 1998) (where claimant's RFC had not changed from first to second administrative hearing and "limitations were reflected in the hypothetical question propounded to the VE at the first hearing, the ALJ could rely upon the first VE's testimony in" making step five finding). The Court finds no reversible error on this issue.

### C. The Court declines to take up Plaintiff's final argument.

Finally, Plaintiff contends that the "case should be remanded because the hearing was held" before ALJ Weiss was properly appointed, and thus he "did not have legal authority to preside over this case or to issue an unfavorable decision." *Doc. 17* at

23 (citing *Lucia v. SEC*, 138 S. Ct. 2044 (2018)). Because the Court will remand on other grounds, it need not decide this issue.

**V.    Conclusion**

The Court finds that the case must be remanded so that the ALJ may reevaluate the RFC in light of Plaintiff's allegations of weakness and fatigue.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (*Doc. 17*) is **granted**. A final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent